UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURA M. VOLKMAR, on behalf of UNITED STATES OF AMERICA,

Plaintiff,

vs.

UNIVERSITY OF ROCHESTER,

Defendant.

**AMENDED COMPLAINT**

**Civil Action No. 17-cv-6090-MAT**

**FILED UNDER SEAL**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S COMPLAINT PURSUANT TO 31 U.S.C §§ 3729, *et seq.* OF THE FEDERAL FALSE CLAIMS ACT**

1. The United States of America ("United States", "U.S." or "Plaintiff"), by and through *qui tam* relator Laura M. Volkmar ("Volkmar" or "Relator"), brings this action under 31 U.S.C §3729, *et seq*. as amended ("False Claims Act") against Defendant, University of Rochester ("UR" or "Defendant") to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States.

## I. PRELIMINARY STATEMENT

2. This is an action to recover damages and civil penalties on behalf of the United States, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or presented, or caused to be made, used, or presented, or any combination thereof, by the Defendant, their agents, employees, or co-conspirators, or any combination thereof, with respect to false or fraudulent claims for radiologic x-ray services performed by non-licensed medical providers for which claims

were made, used or presented, or caused to be made, used, or presented, or any combination thereof to the federal Medicaid and Medicare program.

3. The False Claims Act provides that any person who knowingly made, used or presented, or caused to be made, used, or presented, or any combination thereof, a false or fraudulent record, statement or claim, or any combination thereof, to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times or treble the amount of the damages sustained by the U.S. Government.

4. The False Claim Act allows any person having information about a false or fraudulent record, statement or claim, or any combination thereof, against the U.S. Government to bring an action for himself or herself and the U.S. Government, and to share in any recovery.

5. Under Medicaid and Medicare,

   a) psychiatrists and other prescribers,

   b) mental health agencies, and

   c) pharmacies,

   all have specific responsibilities to prevent false or fraudulent claims from being made, used or presented and are liable under the False Claims Act for their role in the submission of false or fraudulent claims.

6. This is an action for treble damages and penalties for each false or fraudulent claim and each false or fraudulent record or statement under the False Claims Act, 31 U.S.C. §3729, *et seq*., as amended.

## II. JURISDICTION AND VENUE

7. This United States District Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. §3732 and 28 U.S.C. § 1331.

8. Upon information and belief, there have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. §3730(e).

9. Venue is specifically conferred upon this United States District Court pursuant to 31 U.S.C. § 3732(a) because UR transacts business in this District.

## III. PARTIES

10. The Relator is individual and a resident of the City of Rochester, State of New York, and who for all times relevant herein was employed by UR from May 2007 through March 2016 as a Clinical Technologist in UR's Pain Treatment Center, Department of Anesthesiology. The Relator's job duties and responsibilities included, *inter alia*, various procedures involving fluoroscopy x-ray services; notwithstanding, the Relator was a non-licensed radiologic technician and accordingly unauthorized to perform such fluoroscopy services as a matter of New York State law. *See,* N.Y. Pub. Health L. § 3502 and Part 89 of the New York State Administrative Rules and Regulations.

11. Defendant transacts business in this United States District Court and knowingly made, used or presented, or caused to be made, used, or presented, or any combination thereof, a false or fraudulent record, statement or claim, or any combination thereof, to federal Medicaid and Medicare program for radiologic x-ray services performed by non-licensed medical providers which constitutes a false or fraudulent claim under the False Claims Act.

## IV. APPLICABLE LAW

### A. Medicaid

12. Medicaid a cooperative federal-state public assistance program pursuant to which the federal government makes matching funds available to pay for certain medical services furnished to low-income individuals.

13. Federal reimbursement under the Medicaid program excludes radiologic x-ray services performed by non-licensed medical providers. *See,* 42 CFR 410.20(a); 42 CFR 410.20(b); N.Y. Pub. Health L. § 3502(2)(c); Part 89.2(a) of the New York State Administrative Rules and Regulations.

**B. Medicare**

14. Medicare is a federally subsidized health insurance program providing for payment of medical expenses for the elderly and certain disabled persons.

15. Federal reimbursement under the Medicare program excludes radiologic x-ray services performed by non-licensed medical providers. *See,* 42 CFR 410.20(a); 42 CFR 410.20(b); N.Y. Pub. Health L. § 3502(2)(c); Part 89.2(a) of the New York State Administrative Rules and Regulations.

16. Federal reimbursement under the Medicare Part B program is conditioned on certification that the CMS-1500 - Health Insurance Claim Form is received as required by existing laws and regulations. *See,* 42 CFR 424.32 ("No Part B Medicare benefits may be paid unless this form is received as required by existing law and regulations").

**C. False Claims Act**

17. False Claims Act liability attaches to any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to a false record or statement made to get a false or fraudulent claim paid by the government. *See*, 31 U.S.C. §3729(a)(1)&(2).

18. Under the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. *See*, 31 U.S.C. §3729(b).

19. The False Claims Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

**D. Physicians' Services under Medicare Part B**

20. Medicare Part B *pays* for physicians' services. *See*, 42 CFR 410.20(a). (Emphasis added).

21. Medicare Part B *pays* for the services specified in 42 CFR 410.20(a) if they are furnished by a doctor of medicine who is legally authorized to practice by the State in which he or she performs the functions or actions, and who is acting within the scope of his or her license. *See*, 42 CFR 410.20(b). (Emphasis added).

**E. Practice of Radiologic Technology in the State of New York**

22. *Only persons licensed* under this article shall practice radiography. *See*, N.Y. Pub. Health L. § 3502(2)(c). (Emphasis added).

23. The practice of radiography includes, but is not limited to, the following activities performed under the supervision of a licensed practitioner:

a) measuring and positioning patients;

b) selecting and setting up exposure factors on x-ray equipment;

c) using fluoroscopy for localization purposes prior to taking a spot film of a mobile organ such as the gall bladder or the duodenal cap;

d) operating fluoroscopy equipment under the personal supervision of a physician;

e) administering non-intravenous contrast media pursuant to a physician's order;

f) performing quality control tests; and,

g) for individuals certified under section 89.40 of this Part, the intravascular administration of contrast media under the direct supervision when such administration is an integral part of an x-ray or imaging procedure.

*See,* Part 89.2(a) of the New York State Administrative Rules and Regulations.

## V. STATEMENT OF FACTS

24. The Relator became employed as a Clinical Technologist with UR in its Pain Treatment Center, Department of Anesthesiology in May 2007.

25. The Relator held the Clinical Technologist position with UR in its Pain Treatment Center, Department of Anesthesiology through March, 2016.

26. A New York State radiologic technician license was not a prerequisite for obtaining the Clinical Technologist position with UR.

27. Between May 2007 and February 15, 2011, the Pain Treatment Center, Department of Anesthesiology at UR hired *zero* New York State licensed radiologic Technologists (i.e., individuals who are licensed to perform radiologic medical services).

28. Nevertheless, UR required all of its Clinical Technologists in its Pain Treatment Center, Department of Anesthesiology to perform partial fluoroscopy x-rays services—a medical service which requires individuals performing said services to be a licensed radiologic technician.

29. A fluoroscopy is a type of medical imaging that shows a continuous x-ray image on a monitor, much like an x-ray movie. During a fluoroscopy procedure, an x-ray beam is passed through the body. The image is transmitted to a monitor so the movement of a body part or of an instrument or contrast agent through the body can be seen in detail.

30. The Clinical Technologists were required to perform the following fluoroscopy x-rays procedures: Celiac Plexus Block; Cervical Epidural Steroid Injection (neck region); Facet Injection (neck and back area depending on location of pain); Intercostal Nerve Block (back rib area); Lumbar Epidural Steroid Injection (lower back area); Lumbar Sympathetic Block (back area); Radiofrequency Ablation; Sacroiliac Injection (back area); Transforaminal Nerve Root Block; Stellate Ganglion Block; Superior Hypogastric Plexus Block.

31. The Clinical Technologists were required to perform, *inter alia*, the following fluoroscopy x-rays services: transferring patients to the fluoroscopy procedure table; positioning patients on the fluoroscopy procedure table; securing patients to the fluoroscopy procedure table to prevent injury; continually re-positioning the fluoroscopy machine throughout the entire procedure in order to obtain multiple fluoroscopy images; placing the x-ray imager device over patient's body for imaging, depending on area the location of procedure which will be performed; as soon as the fluoroscopy machine was in an estimated location, depressing the dispensing button on the fluoroscopy machine wherein the x-ray would be depressed and the x-ray image displayed on the monitor to verify the initial placement of the fluoroscopy needle; collimating upon the x-rayed area with the fluoroscopy machine as directed by Director of Pain Treatment Center, Dr. Joel Kent.

32. Beginning in May 2007, Relator began hands-on training with Elizabeth Douglas, Clinical Technologist, on fluoroscopy procedures.

33. Between May 2007 and February 15, 2011 ("relevant time period"), six (6) individual Clinical Technologists—ALL non-licensed radiologic technicians—were employed with UR in its Pain Treatment Center, Department of Anesthesiology, and were all performing

fluoroscopy medical services. These individuals included: Maureen Sinsebox, Dana Vanwinkle, Elizabeth Douglas, Kayla McNall, and Dayle Redman.

34. Beginning in May 2007, approximately ten (10) to twelve (12) fluoroscopy procedures were performed daily in the Pain Treatment Center, Department of Anesthesiology. This number gradually increased to approximately twelve (12) to fifteen (15) fluoroscopy procedures performed daily in the Pain Treatment Center, Department of Anesthesiology when the department relocated to accommodate an increase in the number of patients.

35. Upon information and belief, non-licensed Clinical Technologists were performing partial fluoroscopy procedures one (1) or more years prior to May 2007.

36. Part of the Clinical Technologist's duties and responsibilities also included updating the Pain Clinic Fluoroscopy Log Book for each fluoroscopy procedure performed which included a record of the patient's name, address, date of birth, treating physician's name, primary care physician's name, and insurance coverage, as well as a time record of each patient's radiation exposure time.

37. The following are specific instances derived from the Pain Clinic Fluoroscopy Log Book, January 26, 2011 through February 15, 2011, of a false or fraudulent record, statement or claim, or any combination thereof, submitted by UR to federal Medicare or Medicaid program:

    a) On January 27, 2011, Relator, as a non-licensed radiologic technician, performed fluoroscopy x-rays services on patient Mildred Louise Penn in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicare program which constitutes a false or fraudulent record, statement or claim, or any combination thereof, under the False Claims Act.

b) On January 27, 2011, Relator, as a non-licensed radiologic technician, performed sacroiliac injection services (i.e., fluoroscopy x-rays services) on patient Janet Butler Bolton in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicare program which constitutes a false or fraudulent record, statement or claim, or any combination thereof, under the False Claims Act.

c) On February 1, 2011, Relator, as a non-licensed radiologic technician, performed sacroiliac injection services (i.e., fluoroscopy x-rays services) on patient Evelyn Cardwell Hill in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicaid program which constitutes a false or fraudulent record, statement or claim, or any combination thereof, under the False Claims Act.

d) On February 15, 2011, Relator, as a non-licensed radiologic technician, performed thoracic epidural injection services (i.e., fluoroscopy x-rays services) on patient William J. Knoeffler in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicare program which constitutes a false or fraudulent record, statement or claim, or any combination thereof, under the False Claims Act.

38. The final fluoroscopy procedure performed by a non-licensed Clinical Technologist in the Pain Treatment Center, Department of Anesthesiology at UR occurred on February 15, 2011.

39. Between May 2007 and February 15, 2011 (*i.e.*, relevant time period), <u>ALL</u> fluoroscopy radiologic services performed in the Pain Treatment Center, Department of Anesthesiology were partially performed by non-licensed Clinical Technologists.

40. It was frequently repeated in 2007, 2008, 2009, 2010, and 2011 by both (a) Dr. Rajbala Thakur, Treating Physician, (b) Dr. Panzer, Pain Treatment Center Department Head and (c) Dr. Joel Kent, Director, "[w]hat happens in Vegas stay in Vegas," when questioned by staff about whether it was lawful for non-licensed Clinical Technologists to operate the Fluoroscopy x-ray machine and/or perform fluoroscopy procedures.

41. Moreover, in April 2011, Cindy Taylor, Lead Nurse, informed Relator and Kayla McNall, Clinical Technologist, that the two (2) should never have been performing fluoroscopy procedures stating the two (2) individuals "shouldn't even touch the [fluoroscopy] machine."

42. All of UR's management/supervisory staff in the Pain Treatment Center, Department of Anesthesiology between May 2007 and February 15, 2011 were aware that none of the Clinical Technologists were licensed to perform radiologic procedures.

43. The CMS-1500 - Health Insurance Claim Form is used by physicians or medical providers requesting payment or reimbursement for medical services under Medicaid and Medicare Part B. *See*, Exhibits A-B.

44. Until March 31, 2014, a physician requesting reimbursement could use either the old CMS-1500 - Health Insurance Claim Form (version 08/05) or the new CMS-1500 - Health Insurance Claim Form (version 02/12), for paper claims. *See*, Id.

45. Medical services and supplies covered by Medicare Part B include (but may not be limited to): Laboratory tests and x-rays.

46. UR made and used, or caused to be made or used, false or fraudulent record or statement material to a false or fraudulent claim to the U.S. Government for reimbursement of its fluoroscopy procedures under Medicare and Medicaid via CMS-1500 - Health Insurance Claim Forms during the relevant time period.

47. Any Medicare or Medicaid reimbursement claim submitted by UR during the relevant time period in connection with non-licensed Clinical Technologists operating fluoroscopy x-rays was false and fraudulent because:

   a) The individuals performing these fluoroscopy x-rays were non-licensed radiologic technologists and therefore these services were not eligible for reimbursement under federal Medicare and Medicaid program laws.

   *See*, 42 CFR 410.20(a); 42 CFR 410.20(b); N.Y. Pub. Health L. § 3502(2)(c); Part 89.2(a) of the New York State Administrative Rules and Regulations.

48. Moreover, any Medicare Part B reimbursement claim submitted by UR during the relevant time in connection with non-licensed Clinical Technologists operating fluoroscopy x-rays was false and fraudulent because:

   a) The CMS-1500 - Health Insurance Claim Forms expressly certified compliance with all existing New York State law and regulations including but not limited to N.Y. Pub. Health L. § 3502(2)(c) and Part 89.2(a) of the New York State Administrative Rules and Regulations.

*See*, 42 CFR 424.32.

**COUNT I**
**VIOLATION OF 31 U.S.C. §3729(a)(1)(A)**
**FALSE IMPLIED CERTIFICATION THEORY**

49. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-48 above with the same force and effect as if herein set forth.

50. By virtue of the acts described above, Defendant knowingly (a) submitted, and/or (b) caused to be submitted, false or fraudulent claims to the U.S. Government for payment of fluoroscopy medical services performed by non-licensed Clinical Technologists.

51. The U.S. Government paid and/or continues to pay such false or fraudulent claims.

52. By reason of the Defendants' acts, the United States has been damaged, and/or continues to be damaged, in substantial amount to be determined at trial.

**COUNT II**
**VIOLATION OF 31 U.S.C. §3729(a)(1)(B)**
**FALSE EXPRESS CERTIFICATION THEORY**

53. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-52 above with the same force and effect as if herein set forth.

54. By virtue of the acts described above, Defendant knowingly (a) made and used, and/or (b) caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims to the U.S. Government for payment of fluoroscopy medical services performed by non-licensed Clinical Technologists.

55. The U.S. Government paid and/or continues to pay such false or fraudulent claims.

56. By reason of the Defendants' acts, the United States has been damaged, and/or continues to be damaged, in substantial amount to be determined at trial.

**WHEREFORE**, Plaintiff, United States of America, through Relator, requests the Court enter the following relief:

A. That Defendant be ordered to cease and desist from violating 31 U.S.C. §3729 *et seq*.;

B. That judgment be entered against Defendant in an amount equal to three (3) times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. §3729;

C. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §3730(d) of the False Claims Act;

D. That Relator be awarded all costs of this action, including attorneys' fees and expenses; and

E. That Relator recover such other relief as the Court deems just and proper.

DATED: February 17, 2017
Rochester, New York

**THE WOODWORTH LAW FIRM**

By: ______________________

Ryan C. Woodworth, Esq.
The Powers Building
16 West Main Street
Suite 730
Rochester, New York 14614
585-310-2563
ryan@woodwortthlawfirm.com

*Attorneys for Relator,*
*Laura M. Volkmar*

# EXHIBIT A

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

PICA | PICA | CARRIER

1. MEDICARE (Medicare#) | MEDICAID (Medicaid#) | TRICARE (ID#/DoD#) | CHAMPVA (Member ID#) | GROUP HEALTH PLAN (ID#) | FECA BLK LUNG (ID#) | OTHER (ID#)

1a. INSURED'S I.D. NUMBER (For Program in Item 1)

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)

3. PATIENT'S BIRTH DATE MM DD YY SEX M F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)

5. PATIENT'S ADDRESS (No., Street)

6. PATIENT RELATIONSHIP TO INSURED Self Spouse Child Other

7. INSURED'S ADDRESS (No., Street)

CITY STATE

8. RESERVED FOR NUCC USE

CITY STATE

ZIP CODE TELEPHONE (Include Area Code) ( )

ZIP CODE TELEPHONE (Include Area Code) ( )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous) YES NO

a. INSURED'S DATE OF BIRTH MM DD YY SEX M F

b. RESERVED FOR NUCC USE

b. AUTO ACCIDENT? YES NO PLACE (State)

b. OTHER CLAIM ID (Designated by NUCC)

c. RESERVED FOR NUCC USE

c. OTHER ACCIDENT? YES NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. CLAIM CODES (Designated by NUCC)

d. IS THERE ANOTHER HEALTH BENEFIT PLAN? YES NO *If yes, complete items 9, 9a, and 9d.*

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED ____ DATE ____

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED ____

PATIENT AND INSURED INFORMATION

SAMPLE

14. DATE OF CURRENT ILLNESS, INJURY, or PREGNANCY (LMP) MM DD YY QUAL.

15. OTHER DATE QUAL. MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION FROM MM DD YY TO MM DD YY

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE 17a. 17b. NPI

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES FROM MM DD YY TO MM DD YY

19. ADDITIONAL CLAIM INFORMATION (Designated by NUCC)

20. OUTSIDE LAB? YES NO $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY Relate A-L to service line below (24E) ICD Ind

A. B. C. D.
E. F. G. H.
I. J. K. L.

22. RESUBMISSION CODE ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From MM DD YY To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | NPI | |
| 2 | | | | | | | | NPI | |
| 3 | | | | | | | | NPI | |
| 4 | | | | | | | | NPI | |
| 5 | | | | | | | | NPI | |
| 6 | | | | | | | | NPI | |

25. FEDERAL TAX I.D. NUMBER SSN EIN

26. PATIENT'S ACCOUNT NO.

27. ACCEPT ASSIGNMENT? (For govt. claims, see back) YES NO

28. TOTAL CHARGE $

29. AMOUNT PAID $

30. Rsvd for NUCC Use

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

SIGNED DATE

32. SERVICE FACILITY LOCATION INFORMATION a. NPI b.

33. BILLING PROVIDER INFO & PH # ( ) a. NPI b.

PHYSICIAN OR SUPPLIER INFORMATION

NUCC Instruction Manual available at: www.nucc.org *PLEASE PRINT OR TYPE* APPROVED OMB-0938-1197 FORM 1500 (02-12)

BECAUSE THIS FORM IS USED BY VARIOUS GOVERNMENT AND PRIVATE HEALTH PROGRAMS, SEE SEPARATE INSTRUCTIONS ISSUED BY APPLICABLE PROGRAMS.

**NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.**

**REFERS TO GOVERNMENT PROGRAMS ONLY**

MEDICARE AND CHAMPUS PAYMENTS: A patient's signature requests that payment be made and authorizes release of any information necessary to process the claim and certifies that the information provided in Blocks 1 through 12 is true, accurate and complete. In the case of a Medicare claim, the patient's signature authorizes any entity to release to Medicare medical and nonmedical information, including employment status, and whether the person has employer group health insurance, liability, no-fault, worker's compensation or other insurance which is responsible to pay for the services for which the Medicare claim is made. See 42 CFR 411.24(a). If item 9 is completed, the patient's signature authorizes release of the information to the health plan or agency shown. In Medicare assigned or CHAMPUS participation cases, the physician agrees to accept the charge determination of the Medicare carrier or CHAMPUS fiscal intermediary as the full charge, and the patient is responsible only for the deductible, coinsurance and noncovered services. Coinsurance and the deductible are based upon the charge determination of the Medicare carrier or CHAMPUS fiscal intermediary if this is less than the charge submitted. CHAMPUS is not a health insurance program but makes payment for health benefits provided through certain affiliations with the Uniformed Services. Information on the patient's sponsor should be provided in those items captioned in "Insured"; i.e., items 1a, 4, 6, 7, 9, and 11.

**BLACK LUNG AND FECA CLAIMS**

The provider agrees to accept the amount paid by the Government as payment in full. See Black Lung and FECA instructions regarding required procedure and diagnosis coding systems.

**SIGNATURE OF PHYSICIAN OR SUPPLIER (MEDICARE, CHAMPUS, FECA AND BLACK LUNG)**

I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations.

For services to be considered as "incident" to a physician's professional service, 1) they must be rendered under the physician's immediate personal supervision by his/her employee, 2) they must be an integral, although incidental part of a covered physician's service, 3) they must be of kinds commonly furnished in physician's offices, and 4) the services of nonphysicians must be included on the physician's bills.

For CHAMPUS claims, I further certify that I (or any employee) who rendered services am not an active duty member of the Uniformed Services or a civilian employee of the United States Government or a contract employee of the United States Government, either civilian or military (refer to 5 USC 5536). For Black-Lung claims, I further certify that the services performed were for a Black Lung-related disorder.

No Part B Medicare benefits may be paid unless this form is received as required by existing law and regulations (42 CFR 424.32).

NOTICE: Any one who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws.

**NOTICE TO PATIENT ABOUT THE COLLECTION AND USE OF MEDICARE, CHAMPUS, FECA, AND BLACK LUNG INFORMATION (PRIVACY ACT STATEMENT)**

We are authorized by CMS, CHAMPUS and OWCP to ask you for information needed in the administration of the Medicare, CHAMPUS, FECA, and Black Lung programs. Authority to collect information is in section 205(a), 1862, 1872 and 1874 of the Social Security Act as amended, 42 CFR 411.24(a) and 424.5(a) (6), and 44 USC 3101;41 CFR 101 et seq and 10 USC 1079 and 1086; 5 USC 8101 et seq; and 30 USC 901 et seq; 38 USC 613; E.O. 9397.

The information we obtain to complete claims under these programs is used to identify you and to determine your eligibility. It is also used to decide if the services and supplies you received are covered by these programs and to insure that proper payment is made.

The information may also be given to other providers of services, carriers, intermediaries, medical review boards, health plans, and other organizations or Federal agencies, for the effective administration of Federal provisions that require other third parties payers to pay primary to Federal program, and as otherwise necessary to administer these programs. For example, it may be necessary to disclose information about the benefits you have used to a hospital or doctor. Additional disclosures are made through routine uses for information contained in systems of records.

**FOR MEDICARE CLAIMS:** See the notice modifying system No. 09-70-0501, titled, 'Carrier Medicare Claims Record,' published in the Federal Register, Vol. 55 No. 177, page 37549, Wed. Sept. 12, 1990, or as updated and republished.

**FOR OWCP CLAIMS:** Department of Labor, Privacy Act of 1974, "Republication of Notice of Systems of Records," Federal Register Vol. 55 No. 40, Wed Feb. 28, 1990, See ESA-5, ESA-6, ESA-12, ESA-13, ESA-30, or as updated and republished.

**FOR CHAMPUS CLAIMS:** PRINCIPLE PURPOSE(S): To evaluate eligibility for medical care provided by civilian sources and to issue payment upon establishment of eligibility and determination that the services/supplies received are authorized by law.

ROUTINE USE(S): Information from claims and related documents may be given to the Dept. of Veterans Affairs, the Dept. of Health and Human Services and/or the Dept. of Transportation consistent with their statutory administrative responsibilities under CHAMPUS/CHAMPVA; to the Dept. of Justice for representation of the Secretary of Defense in civil actions; to the Internal Revenue Service, private collection agencies, and consumer reporting agencies in connection with recoupment claims; and to Congressional Offices in response to inquiries made at the request of the person to whom a record pertains. Appropriate disclosures may be made to other federal, state, local, foreign government agencies, private business entities, and individual providers of care, on matters relating to entitlement, claims adjudication, fraud, program abuse, utilization review, quality assurance, peer review, program integrity, third-party liability, coordination of benefits, and civil and criminal litigation related to the operation of CHAMPUS.

DISCLOSURES: Voluntary; however, failure to provide information will result in delay in payment or may result in denial of claim. With the one exception discussed below, there are no penalties under these programs for refusing to supply information. However, failure to furnish information regarding the medical services rendered or the amount charged would prevent payment of claims under these programs. Failure to furnish any other information, such as name or claim number, would delay payment of the claim. Failure to provide medical information under FECA could be deemed an obstruction.

It is mandatory that you tell us if you know that another party is responsible for paying for your treatment. Section 1128B of the Social Security Act and 31 USC 3801-3812 provide penalties for withholding this information.

You should be aware that P.L. 100-503, the "Computer Matching and Privacy Protection Act of 1988", permits the government to verify information by way of computer matches.

**MEDICAID PAYMENTS (PROVIDER CERTIFICATION)**

I hereby agree to keep such records as are necessary to disclose fully the extent of services provided to individuals under the State's Title XIX plan and to furnish information regarding any payments claimed for providing such services as the State Agency or Dept. of Health and Human Services may request.

I further agree to accept, as payment in full, the amount paid by the Medicaid program for those claims submitted for payment under that program, with the exception of authorized deductible, coinsurance, co-payment or similar cost-sharing charge.

**SIGNATURE OF PHYSICIAN (OR SUPPLIER):** I certify that the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction.

NOTICE: This is to certify that the foregoing information is true, accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0999. The time required to complete this information collection is estimated to average 10 minutes per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, Attn: PRA Reports Clearance Officer, 7500 Security Boulevard, Baltimore, Maryland 21244-1850. This address is for comments and/or suggestions only. DO NOT MAIL COMPLETED CLAIM FORMS TO THIS ADDRESS.

# EXHIBIT B

1500

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

PICA | PICA | CARRIER

1\. MEDICARE (Medicare #) MEDICAID (Medicaid #) TRICARE CHAMPUS (Sponsor's SSN) CHAMPVA (Member ID#) GROUP HEALTH PLAN (SSN or ID) FECA BLK LUNG (SSN) OTHER (ID)

1a. INSURED'S I.D. NUMBER (For Program in Item 1)

2\. PATIENT'S NAME (Last Name, First Name, Middle Initial)

3\. PATIENT'S BIRTH DATE MM DD YY SEX M F

4\. INSURED'S NAME (Last Name, First Name, Middle Initial)

5\. PATIENT'S ADDRESS (No., Street)

6\. PATIENT RELATIONSHIP TO INSURED Self Spouse Child Other

7\. INSURED'S ADDRESS (No., Street)

CITY STATE

8\. PATIENT STATUS Single Married Other

CITY STATE

ZIP CODE TELEPHONE (Include Area Code) ( )

Employed Full-Time Student Part-Time Student

ZIP CODE TELEPHONE (Include Area Code) ( )

9\. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10\. IS PATIENT'S CONDITION RELATED TO:

11\. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous) YES NO

a. INSURED'S DATE OF BIRTH MM DD YY SEX M F

b. OTHER INSURED'S DATE OF BIRTH MM DD YY SEX M F

b. AUTO ACCIDENT? PLACE (State) YES NO

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT? YES NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN? YES NO If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

12\. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED DATE

13\. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED

PATIENT AND INSURED INFORMATION

14\. DATE OF CURRENT: MM DD YY ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP)

15\. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS, GIVE FIRST DATE MM DD YY

16\. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION MM DD YY FROM TO

17\. NAME OF REFERRING PROVIDER OR OTHER SOURCE 17a. 17b. NPI

18\. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES MM DD YY FROM TO

19\. RESERVED FOR LOCAL USE

20\. OUTSIDE LAB? $ CHARGES YES NO

21\. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY (Relate Items 1, 2, 3 or 4 to Item 24E by Line)

1\. 3.

2\. 4.

22\. MEDICAID RESUBMISSION CODE ORIGINAL REF. NO.

23\. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From MM DD YY To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | NPI | |
| 2 | | | | | | | | NPI | |
| 3 | | | | | | | | NPI | |
| 4 | | | | | | | | NPI | |
| 5 | | | | | | | | NPI | |
| 6 | | | | | | | | NPI | |

PHYSICIAN OR SUPPLIER INFORMATION

25\. FEDERAL TAX I.D. NUMBER SSN EIN

26\. PATIENT'S ACCOUNT NO.

27\. ACCEPT ASSIGNMENT? (For govt. claims, see back) YES NO

28\. TOTAL CHARGE $

29\. AMOUNT PAID $

30\. BALANCE DUE $

31\. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

SIGNED DATE

32\. SERVICE FACILITY LOCATION INFORMATION

a. b.

33\. BILLING PROVIDER INFO & PH # ( )

a. b.

NUCC Instruction Manual available at: www.nucc.org PLEASE PRINT OR TYPE APPROVED OMB-0938-0999 FORM CMS-1500 (08-05)

SAMPLE

BECAUSE THIS FORM IS USED BY VARIOUS GOVERNMENT AND PRIVATE HEALTH PROGRAMS, SEE SEPARATE INSTRUCTIONS ISSUED BY APPLICABLE PROGRAMS.

**NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.**

**REFERS TO GOVERNMENT PROGRAMS ONLY**

MEDICARE AND CHAMPUS PAYMENTS: A patient's signature requests that payment be made and authorizes release of any information necessary to process the claim and certifies that the information provided in Blocks 1 through 12 is true, accurate and complete. In the case of a Medicare claim, the patient's signature authorizes any entity to release to Medicare medical and nonmedical information, including employment status, and whether the person has employer group health insurance, liability, no fault, worker's compensation or other insurance which is responsible to pay for the services for which the Medicare claim is made. See 42 CFR 411.24(a). If item 9 is completed, the patient's signature authorizes release of the information to the health plan or agency shown. In Medicare assigned or CHAMPUS participation cases, the physician agrees to accept the charge determination of the Medicare carrier or CHAMPUS fiscal intermediary as the full charge, and the patient is responsible only for the deductible, coinsurance and noncovered services. Coinsurance and the deductible are based upon the charge determination of the Medicare carrier or CHAMPUS fiscal intermediary if this is less than the charge submitted. CHAMPUS is not a health insurance program but makes payment for health benefits provided through certain affiliations with the Uniformed Services. Information on the patient's sponsor should be provided in those items captioned in "Insured"; i.e., items 1a, 4, 6, 7, 9, and 11.

**BLACK LUNG AND FECA CLAIMS**

The provider agrees to accept the amount paid by the Government as payment in full. See Black Lung and FECA instructions regarding required procedure and diagnosis coding systems.

**SIGNATURE OF PHYSICIAN OR SUPPLIER (MEDICARE, CHAMPUS, FECA AND BLACK LUNG)**

I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations.

For services to be considered as "incident" to a physician's professional service, 1) they must be rendered under the physician's immediate personal supervision by his/her employee, 2) they must be an integral, although incidental part of a covered physician's service, 3) they must be of kinds commonly furnished [illegible] and 4) the services of nonphysicians must be included on the physician's bills.

For CHAMPUS claims, I further certify that I (or any employee) who rendered services am not an active duty member of the Uniformed Services or a civilian employee of the United States Government or a contract employee of the United States Government, either civilian or military (refer to 5 USC 5536). For Black Lung claims, I further certify that the services performed were for a Black Lung-related disorder.

No Part B Medicare benefits may be paid unless this form is received as required by existing law and regulations (42 CFR 424.32).

NOTICE: Any one who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws.

**NOTICE TO PATIENT ABOUT THE COLLECTION AND USE OF MEDICARE, CHAMPUS, FECA, AND BLACK LUNG INFORMATION (PRIVACY ACT STATEMENT)**

We are authorized by CMS, CHAMPUS and OWCP to ask you for information needed in the administration of the Medicare, CHAMPUS, FECA, and Black Lung programs. Authority to collect information is in section 205(a), 1862, 1872 and 1874 of the Social Security Act as amended, 42 CFR 411.24(a) and 424.5(a) (6), and 44 USC 3101;41 CFR 101 et seq and 10 USC 1079 and 1086; 5 USC 8101 et seq; [illegible] et seq; 38 USC 613; E.O. 9397.

The information we obtain to complete claims under these programs is used to identify you and to determine your eligibility. It is also used to decide if the services and supplies you received are covered by these programs and to insure that proper payment is made.

The information may also be given to other providers of services, carriers, intermediaries, medical review boards, health plans, and other organizations or Federal agencies, for the effective administration of Federal provisions that require other third parties payers to pay primary to Federal program, and as otherwise necessary to administer these programs. For example, it may be necessary to disclose information about the benefits you have used to a hospital or doctor. Additional disclosures are made through routine uses for information contained in systems of records.

**FOR MEDICARE CLAIMS:** See the notice modifying system No. 09-70-0501, titled, "Carrier Medicare Claims Record," published in the Federal Register, Vol. 55 No. 177, page 37549, Wed. Sept. 12, 1990, or as updated and republished.

**FOR OWCP CLAIMS:** Department of Labor, Privacy Act of 1974, "Republication of Notice of Systems of Records," Federal Register Vol. 55 No. 40, Wed Feb. 28, 1990, See ESA-5, ESA-6, ESA-12, ESA-13, ESA-30, or as updated and republished.

**FOR CHAMPUS CLAIMS:** PRINCIPLE PURPOSE(S): To evaluate eligibility for medical care provided by civilian sources and to issue payment upon establishment of eligibility and determination that the services/supplies received are authorized by law.

ROUTINE USE(S): Information from claims and related documents may be given to the Dept. of Veterans Affairs, the Dept. of Health and Human Services and/or the Dept. of Transportation consistent with their statutory administrative responsibilities under CHAMPUS/CHAMPVA; to the Dept. of Justice for representation of the Secretary of Defense in civil actions; to the Internal Revenue Service, private collection agencies, and consumer reporting agencies in connection with recoupment claims; and to Congressional Offices in response to inquiries made at the request of the person to whom a record pertains. Appropriate disclosures may be made to other federal, state, local, foreign government agencies, private business entities, and individual providers of care, on matters relating to entitlement, claims adjudication, fraud, program abuse, utilization review, quality assurance, peer review, program integrity, third-party liability, coordination of benefits, and civil and criminal litigation related to the operation of CHAMPUS.

DISCLOSURES: Voluntary; however, failure to provide information will result in delay in payment or may result in denial of claim. With the one exception discussed below, there are no penalties under these programs for refusing to supply information. However, failure to furnish information regarding the medical services rendered or the amount charged would prevent payment of claims under these programs. Failure to furnish any other information, such as name or claim number, would delay payment of the claim. Failure to provide medical information under FECA could be deemed an obstruction.

It is mandatory that you tell us if you know that another party is responsible for paying for your treatment. Section 1128B of the Social Security Act and 31 USC 3801-3812 provide penalties for withholding this information.

You should be aware that P.L. 100-503, the "Computer Matching and Privacy Protection Act of 1988", permits the government to verify information by way of computer matches.

**MEDICAID PAYMENTS (PROVIDER CERTIFICATION)**

I hereby agree to keep such records as are necessary to disclose fully the extent of services provided to individuals under the State's Title XIX plan and to furnish information regarding any payments claimed for providing such services as the State Agency or Dept. of Health and Human Services may request.

I further agree to accept, as payment in full, the amount paid by the Medicaid program for those claims submitted for payment under that program, with the exception of authorized deductible, coinsurance, co-payment or similar cost-sharing charge.

SIGNATURE OF PHYSICIAN (OR SUPPLIER): I certify that the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction.

NOTICE: This is to certify that the foregoing information is true, accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws.

---

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0999. The time required to complete this information collection is estimated to average 10 minutes per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, Attn: PRA Reports Clearance Officer, 7500 Security Boulevard, Baltimore, Maryland 21244-1850. This address is for comments and/or suggestions only. DO NOT MAIL COMPLETED CLAIM FORMS TO THIS ADDRESS.

# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA M. VOLKMAR, on behalf of UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERISTY OF ROCHESTER,<br><br>Defendant. | **AFFIDAVIT**<br><br>**Civil Action No.** |

I, Laura M. Volkmar, declare under penalties of perjury that the foregoing facts are true and correct to the best of my information and belief:

1. I am an individual and a resident of the City of Rochester, State of New York, and who for all times relevant herein was employed by Defendant, University of Rochester ("Defendant" or "UR") from May 2007 through March 2016 as a Clinical Technologist in UR's Pain Treatment Center, Department of Anesthesiology.
2. A New York State radiologic technician license was not a prerequisite for obtaining the Clinical Technologist position with UR.
3. Between May 2007 and February 15, 2011, the Pain Treatment Center, Department of Anesthesiology at UR hired *zero* New York State licensed radiologic Technologists (i.e., individuals who are licensed to perform radiologic medical services).
4. Nevertheless, UR required all of its Clinical Technologists in its Pain Treatment Center, Department of Anesthesiology to perform partial fluoroscopy x-rays services—a medical service which requires individuals performing said services to be a licensed radiologic technician.

5. A fluoroscopy is a type of medical imaging that shows a continuous x-ray image on a monitor, much like an x-ray movie. During a fluoroscopy procedure, an x-ray beam is passed through the body. The image is transmitted to a monitor so the movement of a body part or of an instrument or contrast agent through the body can be seen in detail.
6. The Clinical Technologists were required to perform the following fluoroscopy x-rays procedures: Celiac Plexus Block; Cervical Epidural Steroid Injection (neck region); Facet Injection (neck and back area depending on location of pain); Intercostal Nerve Block (back rib area); Lumbar Epidural Steroid Injection (lower back area); Lumbar Sympathetic Block (back area); Radiofrequency Ablation; Sacroiliac Injection (back area); Transforaminal Nerve Root Block; Stellate Ganglion Block; Superior Hypogastric Plexus Block.
7. The Clinical Technologists were required to perform, *inter alia*, the following fluoroscopy x-rays services: transferring patients to the fluoroscopy procedure table; positioning patients on the fluoroscopy procedure table; securing patients to the fluoroscopy procedure table to prevent injury; continually re-positioning the fluoroscopy machine throughout the entire procedure in order to obtain multiple fluoroscopy images; placing the x-ray imager device over patient's body for imaging, depending on area the location of procedure which will be performed; as soon as the fluoroscopy machine was in an estimated location, depressing the dispensing button on the fluoroscopy machine wherein the x-ray would be depressed and the x-ray image displayed on the monitor to verify the initial placement of the fluoroscopy needle; collimating upon the x-rayed area with the fluoroscopy machine as directed by Director of Pain Treatment Center, Dr. Joel Kent.

8. Beginning in May 2007, I began hands-on training with Elizabeth Douglas, Clinical Technologist, on fluoroscopy procedures.

9. Between May 2007 and February 15, 2011 ("relevant time period"), six (6) individual Clinical Technologists—ALL non-licensed radiologic technicians—were employed with UR in its Pain Treatment Center, Department of Anesthesiology, and were all performing fluoroscopy medical services. These individuals included: Maureen Sinsebox, Dana Vanwinkle, Elizabeth Douglas, Kayla McNall, and Dayle Redman.

10. Beginning in May 2007, approximately ten (10) to twelve (12) fluoroscopy procedures were performed daily in the Pain Treatment Center, Department of Anesthesiology. This number gradually increased to approximately twelve (12) to fifteen (15) fluoroscopy procedures performed daily in the Pain Treatment Center, Department of Anesthesiology when the department relocated to accommodate an increase in the number of patients.

11. Upon information and belief, non-licensed Clinical Technologists were performing partial fluoroscopy procedures one (1) or more years prior to May 2007.

12. Part of the Clinical Technologist's duties and responsibilities also included updating the Pain Clinic Fluoroscopy Log Book for each fluoroscopy procedure performed which included a record of the patient's name, address, date of birth, treating physician's name, primary care physician's name, and insurance coverage, as well as a time record of each patient's radiation exposure time.

13. The following are specific fluoroscopy procedures derived from the Pain Clinic Fluoroscopy Log Book, January 26, 2011 through February 15, 2011 submitted by UR to federal Medicare or Medicaid program:

a. On January 27, 2011, I, as a non-licensed radiologic technician, performed fluoroscopy x-rays services on patient Mildred Louise Penn in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicare program.

b. On January 27, 2011, I, as a non-licensed radiologic technician, performed sacroiliac injection services (i.e., fluoroscopy x-rays services) on patient Janet Butler Bolton in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicare program.

c. On February 1, 2011, I, as a non-licensed radiologic technician, performed sacroiliac injection services (i.e., fluoroscopy x-rays services) on patient Evelyn Cardwell Hill in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicaid program.

d. On February 15, 2011, I, as a non-licensed radiologic technician, performed thoracic epidural injection services (i.e., fluoroscopy x-rays services) on patient William J. Knoeffler in the Pain Treatment Center, Department of Anesthesiology at UR which UR then billed federal Medicare program.

14. The final fluoroscopy procedure performed by a non-licensed Clinical Technologist in the Pain Treatment Center, Department of Anesthesiology at UR occurred on February 15, 2011.

15. Between May 2007 and February 15, 2011 (*i.e.*, relevant time period), ALL fluoroscopy radiologic services performed in the Pain Treatment Center, Department of Anesthesiology were partially performed by non-licensed Clinical Technologists.

16. It was frequently repeated in 2007, 2008, 2009, 2010, and 2011 by both (a) Dr. Rajbala Thakur, Treating Physician, (b) Dr. Panzer, Pain Treatment Center Department Head and (c) Dr. Joel Kent, Director, "[w]hat happens in Vegas stay in Vegas," when questioned by staff about whether it was lawful for non-licensed Clinical Technologists to operate the Fluoroscopy x-ray machine and/or perform fluoroscopy procedures.

17. Moreover, in April 2011, Cindy Taylor, Lead Nurse, informed me and Kayla McNall, Clinical Technologist, that the two (2) of us should never have been performing fluoroscopy procedures stating we "shouldn't even touch the [fluoroscopy] machine."

18. All of UR's management/supervisory staff in the Pain Treatment Center, Department of Anesthesiology between May 2007 and February 15, 2011 were aware that none of the Clinical Technologists were licensed to perform radiologic procedures.

Date: February 10, 2017

Laura M. Volkmar

Laura M. Volkmar

Sworn to before me this
10th day of February, 2017

Kathryn M. Montante

Notary Public

KATHRYN M. MONTANTE
Notary Public, State of New York
Qualified in Monroe County
Commission Expires 11-28-2018